*SM*

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

RECEIVED

DEC 21 2022 SH

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Tabituha Cox )
_____ )
)
Plaintiff(s), )
)
v. Advocate Health )
Care Trinity Hospital )
)
Defendant(s). )

Case Number: _____

**22-7194**
**Judge Durkin**
**Magistrate Judge Cox**
**Cat 3/Random**

### COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Tabituha Cox of the county of Cook in the state of Illinois.

3. The defendant is Advocate Health Care Trinity Hospital whose street address is 2320 E. 93rd Street,
(city) Chicago (county) Cook (state) IL (ZIP) 60617
(Defendant's telephone number) (773)- 967-2000

4. The plaintiff sought employment or was employed by the defendant at (street address)
2320 E. 93rd Street (city) Chicago
(county) Cook (state) Chicago (ZIP code) 60617

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.   The plaintiff [*check one box*]

(a)   ☐   was denied employment by the defendant.

(b)   ☒   was hired and is still employed by the defendant.

(c)   ☐   was employed but is no longer employed by the defendant.

6.   The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) February , (day) 28 , (year) 2020 .

7.1  (*Choose paragraph 7.1 or 7.2, do not complete both*.)

(a)   The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☒*has* ☐*has not* filed a charge or charges against the defendant

asserting the acts of discrimination indicated in this complaint with any of the

following government agencies:

(i)   ☒ the United States Equal Employment Opportunity Commission, on or about

(month) December (day) 23 (year) 2020 .

(ii)  ☒ the Illinois Department of Human Rights, on or about

(month) December (day) 23 (year) 2020 .

(b)   If charges *were* filed with an agency indicated above, a copy of the charge is

attached. ☒ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois

Department of Human Rights to cross-file with the other agency all charges received. The

plaintiff has no reason to believe that this policy was not followed in this case.

7.2  The defendant is a federal governmental agency, and

(a)   the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

☐ Yes (month)_____ (day)_____ (year) _____

☐ No, did not file Complaint of Employment Discrimination

(b)     The plaintiff received a Final Agency Decision on (month)_____

(day) _____ (year) _____.

(c)     Attached is a copy of the

(i) Complaint of Employment Discrimination,

☐ Yes   ☐ No, but a copy will be filed within 14 days.

(ii) Final Agency Decision

☐ Yes   ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a) ☐     the United States Equal Employment Opportunity Commission has not

issued a *Notice of Right to Sue.*

(b) ☑     the United States Equal Employment Opportunity Commission has issued

a *Notice of Right to Sue*, which was received by the plaintiff on

(month) September (day) 28 (year) 2022 a copy of which

*Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [***check only***

***those that apply***]:

(a) ☐ Age (Age Discrimination Employment Act).

(b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☒ Sex (Title VII of the Civil Rights Act of 1964)

10. If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11. Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12. The defendant [*check only those that apply*]

(a) ☐ failed to hire the plaintiff.

(b) ☐ terminated the plaintiff's employment.

(c) ☐ failed to promote the plaintiff.

(d) ☐ failed to reasonably accommodate the plaintiff's religion.

(e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐ failed to stop harassment;

(g) ☐ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h) ☒ other (specify): fail to protect and hear me out as a woman,

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I was not included in their meetings.
Also advocate legal department did not ask me
what happen on the job that day. I felt
mistreated, unheard, and pushed aside as a woman.

13. The facts supporting the plaintiff's claim of discrimination are as follows:

~~continuation on~~ blank paper on next sheet

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☒ Yes ☐ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

   (a)   ☐ Direct the defendant to hire the plaintiff.

   (b)   ☐ Direct the defendant to re-employ the plaintiff.

   (c)   ☐ Direct the defendant to promote the plaintiff.

   (d)   ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

   (e)   ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

   (f)   ☒ Direct the defendant to (specify): compensate for the mental
         and emotional injury that it cause to the
         plaintiff.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

Plaintiff <u>Tabitha Cox</u>     Defendant <u>Advocate Heath Care Trinity Hospital</u>

13) I have a police report. Also this was not only harrassment but it was also physical assault with 4 open hand strikes hard in my right upper back. I experienced workplace voilence at Advocate Trinity Hospital which made me feel unsafe. Also I felt humilated and discriminated as a women because most likely if I was a man he would not have hit me multiple times, yelled at me, and mistreated me that way. Also the Charge nurse Rosemary Rodriguez mentioned to me that the same person, he slapped her in her back and yells at her. She is also a woman. For us as woman to be mistreated on the job is unacceptable.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

_Tabitha Cox_
(Plaintiff's signature)

Tabituna Cox
(Plaintiff's name)

455 E. 88th Street
(Plaintiff's street address)

(City) Chicago  (State) IL  (ZIP) 60619

(Plaintiff's telephone number) (773) - 699-9477

Date: 12/21/22

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

CHICAGO POLICE DEPARTMENT

# ORIGINAL CASE INCIDENT REPORT

3510 S. Michigan Avenue, Chicago, Illinois 60653
(For use by Chicago Police Department Personnel Only)
CPD-11.388(6/03)-C)

RD #: **JD361737**

EVENT #: 2025307876

Case ID: 12161163 CASR229

## ASSIGNED TO SUMMARY

| | |
|---|---|
| IUCR | 0460 - Battery - Simple |

| Occurrence Location: | 2320 E 93rd St | Beat: 0413 | Unit Assigned: | 0402 |
|---|---|---|---|---|
| | Chicago IL | | RO Arrival Date: | 09 September 2020 15:04 |
| | 233 - Hospital Building / Grounds | | | # Offenders: 1 |
| Occurrence Date: | 28 February 2020 08:00 | | | |

## VICTIM - Individual

| Name: | BOYKINS-COX, Tabituha L | Demographics | | |
|---|---|---|---|---|
| | | Female | DOB: | 20 July 1993 |
| Res: | 8446 S Burley Ave #2R | Black | Age: | 27 Years |
| | Chicago IL | Beat: 0424 | DLN: | B25281293806 - IL |
| | 773 - 699 - 9477 | | | |
| | | Beat: 5100 | | |

Sobriety: Unknown

## Injury Info (BOYKINS-COX,Tabituha L - Victim )

Injured by offender

Responding Unit:

| Type | Weapon Used | Other Weapon Used |
|---|---|---|
| None Visible | Hand/Feet/Teeth/Etc. | Other - Open Hand Strike |

## Suspect # 1



| Name: | | Demographics |
|---|---|---|
| Empl: | | |

### Injury Info

Responding
Unit:

RD #: JD361737



Chicago Police Department - Incident Report

RD #: JD361737



**RELATIONSHIP**

| (Victim) | ( Offender ) |
|---|---|
| BOYKINS-COX, Tabituha,L | |

**DOMESTIC INFO**

**OTHER**

**Miscellaneous**

Victim Information Provided

Flash Message Sent ? No

**NARRATIVE**

EVENT# 07876 IN SUMMARY TABITUHA BOYKINS-COX (VICTIM) CAME INTO 004TH DISTRICT TO FILE A REPORT THAT OCCURRED ON 28 FEB 2020. VICTIM RELATED SHE IS A NURSE AT TRINITY HOSPITAL, WHEN SHE WAS WORKING, PHYSICIAN SAID ███████ (OFFENDER) HAD GOT ANGRY AT VICTIM FOR HOW SHE TOOK A PATIENTS TEMPERATURE. OFFENDER THEN PROCEEDED TO HIT VICTIM IN HER BACK 4 TIMES WITH AN OPEN HAND. VICTIM RELATED SHE HAD TO TAKE IBUPROFEN AFTER THE INCIDENT FOR A COUPLE OF DAYS DUE TO HAVING PAIN IN HER BACK. VICTIM RELATED SHE HAD REPORTED THE INCIDENT TO HER SUPERVISORS BUT DIDN'T KNOW AT THE TIME SHE COULD MAKE REPORT. VICTIM GIVEN VIN.

**PERSONNEL**

| | Star No | Emp No | Name | User | Date | Unit | Beat |
|---|---|---|---|---|---|---|---|
| Approving Supervisor | 999 | | OBRIEN, Matthew, J | | 09 Sep 2020 21:40 | 004 | |
| Detective / Investigator | 20353 | | SULLIVAN, Richard, J | | 10 Sep 2020 07:31 | 620 | |
| Reporting Officer | 19909 | | STANLEY, Alvin, | | 09 Sep 2020 15:31 | 715 | 0402 |

Print Generated By:

Page 2 of 2

24-SEP-2020 13:23

**From:** Cox, Tabituha <Tabituha.Cox@aah.org>
**Sent:** Friday, December 18, 2020 5:37 PM
**To:** Porter, Zara <Zara.Porter@aah.org>; Robinson, Nedra <Nedra.Robinson@aah.org>
**Subject:** Fw: Safety Event Report TABITUHA BOYKINS-COX

Tabituha Boykins-Cox
Certified Nurse Assistant/CRU NURSING FLOATS
02/28/2020
Time Written:12:11pm
MICU Department

To Whom It May Concern:

   I, Tabituha Boykins-Cox was taking the patient's temperature axilliary in room 9 around 8:00 am when Dr. Said Abuhasna hit me hard 4 times on my right upper back. He yelled at me and said, "You don't take patient's temperature axiliary! You take them orally or rectally!" He left the room. I didn't say or do anything back but I was in shock that he did that. I walked out of the room and asked the nurse, Rachael sitting outside the room at the computer, "What is that doctor's name?" Rachael told me that is Dr. Abuhasna. I told her what just happened. So I talked to the charge nurse, Rose. Rose had talked to him and then she told me to come over to talk to him. All three of us were standing there. They had me demonstrate how hard he hit me on the wall. Dr. Abuhasna said that he gently pap me on my back. He said, "You are lying and that I don't like that false accusation. You did something wrong." I told him, "I took the temperature axilliary. You didn't pap me on the back, you hit me 4 times hard on my back." He said, "Who is your manager? You can talk to whoever you want. You're lying." I said, " I'm not lying. I'm one of Jehovah's Witnesses and I am not lying. You hit me." He said that didn't matter. I remained respectful all the time while I was talking to him. I held my feelings in and went into the breakroom and cried.

         This is my 2nd encounter with Dr. Abuhasna. The 1st encounter I had with him I had let it go when I was on 4S taking a patient's blood pressure in the summer when he walked in the room and yelled at me in front of the patient then took the blood pressure cuff off the patient. The blood pressure arrow was a little away from the artery. He put the blood pressure cuff back on the arm and aligned it exactly on the artery. I took it as a learning experience and let it go. I remained respectful.

      The 1st encounter with Dr. Abuhasna, he yelled at me in front of the patient in the room. The 2nd encounter he hit me hard 4 times on my back and yelled at me in front of the patient in the room. I will not tolerate this type of harassment at work. I don't want to get anybody in trouble. I don't want this type of behavior to continue. Please stop this harrassment. It is unacceptable to mistreat, yelled, hit, or put your hands on a coworker in any way.


Sincerely,
Tabituha Boykins-Cox
CNA, CRU Nursing Floats

CORRECTIONS BY TBC on 09/28/2020 @14:20 pm:
* Auxiliary" was corrected as Axillary. I had misspelled the word.
*"Said" the doctor's first name was added so you can know which doctor I was specifically talking about.
*"Abushasna" was corrected as Abuhasna. I had misspelled his name.

These are the corrections that needed to be made to the original report. Also this was not only harassment but it was physical assault with 4 open hand strikes hard in my back. I experienced workplace violence at Advocate Trinity Hospital which made me feel unsafe working at the hospital. Also I felt humiliated and discriminated as a women because most likely if I was a man he would not have hit me multiple times, yelled at me, and mistreated that way.


Sincerely,
Tabituha Boykins-Cox
Certified Nurse Assistant/CRU Nursing Float

---

**From:** Porter, Zara <Zara.Porter@advocatehealth.com>
**Sent:** Friday, February 28, 2020 4:28 PM
**To:** Cox, Tabituha <Tabituha.Boykinscox@advocatehealth.com>
**Subject:** Re: Safety Event Report TABITUHA BOYKINS-COX

Thanks for documenting this incident. I will send this email to Manager of ICU and the Executive Nursing Director.


Thanks
Zara

---

**From:** Cox, Tabituha <Tabituha.Boykinscox@advocatehealth.com>
**Sent:** Friday, February 28, 2020 1:45 PM
**To:** Porter, Zara <Zara.Porter@advocatehealth.com>
**Subject:** Safety Event Report TABITUHA BOYKINS-COX

Tabituha Boykins-Cox
Certified Nurse Assistant/CRU NURSING FLOATS
02/28/2020
Time Written:12:11pm
MICU Department

To Whom It May Concern:

I, Tabituha Boykins-Cox was taking the patient's temperature auxiliary in room 9 around 8:00 am when Dr. Abuhasna hit me hard 4 times on my right upper back.

He yelled at me and said you don't take patient's temperature auxiliary, you take oral or rectal and he left the room. I didn't say or do anything back but I was in shock that he did that. I walked out of the room and asked the nurse, Rachael sitting outside the room at the computer, "What is that doctor's name?" Rachael told me that is Dr. Abushasna. I told her what just happened. So I talked to the charge nurse, Rose. Rose had talked to him and then she told me to come over to talk to him. All three of us were standing there. They had me demonstrate how hard he hit me on the wall. Dr. Abushasna said that he gently pap me on my back. He said, "You are lying and that I don't like that false accusation. You did something wrong." I told him, "I took the temperature auxiliary. You didn't pap me on the back, you hit me 4 times hard on my back." He said, "Who is your manager? You can talk to whoever you want. You're lying." I said, " I'm not lying. I'm one of Jehovah's Witnesses and I am not lying. You hit me." He said that didn't matter. I remained respectful all the time while I was talking to him. I held my feelings in and went into the breakroom and cried.

This is my 2nd encounter with Dr. Abushasna. The 1st encounter I had with him I had let it go when I was on 4S taking a patient's blood pressure in the summer when he walked in the room and yelled at me in front of the patient then took the blood pressure cuff off the patient. The blood pressure arrow was a little away from the artery. He put the blood pressure cuff back on the arm and aligned it exactly on the artery. I took it as a learning experience and let it go. I remained respectful.

The 1st encounter with Dr. Abuhasna, he yelled at me in front of the patient in the room. The 2nd encounter he hit me hard 4 times on my back and yelled at me in front of the patient in the room. I will not tolerate this type of harassment at work. I don't want to get anybody in trouble. I don't want this type of behavior to continue. Please stop this harrassment. It is unacceptable to mistreat, yelled, hit, or put your hands on a coworker in any way.


Sincerely,
Tabituha Boykins-Cox
CNA, CRU Nursing Floats

pg. 3

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

### DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

**To:** Ms. Tabituha Cox
8446 S. Burley Ave Apt. 2R
Chicago, IL 60617

Charge No: 440-2021-00647

EEOC Representative and email:    Jana Diamond
Investigator
jana.diamond@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2021-00647.

On behalf of the Commission,

Digitally Signed By: Julianne Bowman
9/28/2022
Julianne Bowman
District Director

Cc: ADVOCATE AURORA HEALTH

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

### IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

### ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

### HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a FOIA Request or 2) a Section 83 request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your request for the charge file promptly to allow sufficient time for EEOC to respond and for your review. Submit a signed written request stating it is a "FOIA Request" or a "Section 83 Request" for Charge Number 440-2021-00647 to the District Director at Julianne Bowman, 230 S Dearborn Street

Chicago, IL 60604.

You can also make a FOIA request online at https://eeoc.arkcase.com/foia/portal/login.

Enclosure with EEOC Notice of Closure and Rights (01/22)

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA Requests and Section 83 Requests, go to: https://www.eeoc.gov/eeoc/foia/index.cfm.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2021-00647 |

| ILLINOIS DEPARTMENT OF HUMAN RIGHTS | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **MS. TABITUHA COX** | **(773) 699-9477** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **8446 S. BURLEY AVE APT. 2R, CHICAGO,IL 60617** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **ADVOCATE HEALTH CARE TRINITY HOSPITAL** | **501+** | **(773) 967-2000** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2320 E. 93RD STREET, CHICAGO, IL 60617** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **02-28-2020** | **02-28-2020** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

**I began my employment with Respondent on or about July 15, 2019. My current position is CNA Registry. During my employment, I was subjected to a physical assault. I complained to Respondent. I will be taking therapy session from the psychological injury.**

**I believe that I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally signed by Tabituha Cox on 12-23-2020 02:02 PM EST** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

**AdvocateAurora**Health       3075 Highland Parkway       T (630) 572-9393
                              Suite 600                    advocateaurorahealth.org
                              Downers Grove, Illinois 60515

**VIA EEOC Portal**

January 22, 2021

Charles M. Brown
U.S. Equal Employment Opportunity Commission
Chicago District Office
230 South Dearborn Street, St. 2920
Chicago, Illinois 60604

> **Re:    Tabituha Cox v. Advocate Trinity Hospital**
>          **EEOC Charge No. 44-2021-00647**

Dear Investigator:

Advocate Trinity Hospital ("Advocate") submits this Position Statement in response to the above-referenced Charge of Discrimination ("Charge"), filed on or about December 23, 2020 by Tabituha Cox ("Complainant").   Advocate did not discriminate against Complainant based on her sex or on any other basis.  As explained more fully below, Complainant's Charge is meritless and should be dismissed in its entirety.[1]

## I.  FACTUAL BACKGROUND

### A.    Overview of Advocate

As of April 2018, Advocate Health Care merged with Aurora Health Care. The combined system is now Advocate Aurora Health ("AAH").  Following the merger, AAH has become one of the top 10 largest not-for-profit health care networks in the United States. AAH has hospitals, outpatient centers, immediate care clinics, surgical centers, laboratories, imaging centers, and physical therapy locations throughout Illinois and Wisconsin.

AAH operates Advocate Trinity Hospital ("Advocate"), a 205-bed health care provider located on Chicago's Southeast Side.  Advocate Trinity Hospital has nearly 556 affiliated physicians.   Advocate Trinity Hospital is a Designated Primary Stroke Center.  Its

---

[1] As a health care system, Advocate has been working tirelessly to ensure the safety and care of our patients and team members during this unprecedented COVID-19 pandemic. This response has been drafted using the best information available at the present time. Given the necessity to focus its resources on COVID-19, Advocate reserves the right to supplement this response should additional information or documentation subsequently become available. The information and legal arguments contained in this Position Statement is based on Advocate Legal Department's current understanding of the available evidence. Advocate's submission of information during the course of this investigation does not constitute a waiver of any available defenses or objections that it may have or seek to raise at a later time during this or any other legal proceeding.

**AdvocateAuroraHealth**

3075 Highland Parkway       T (630) 572-9393
Suite 600                   advocateaurorahealth.org
Downers Grove, Illinois 60515

Emergency Department team care model and triage delivery system minimizes wait times and enhances care coordination, while their multi-disciplinary approach to in-patient care optimizes discharge planning and bedside engagement between providers, patients and family members.

**B.      Advocate's Policies**

Advocate's mission is to serve the health needs of individuals, families and communities through a holistic philosophy that is faith-based. Advocate also espouses certain faith-based values. Advocate's core values of compassion, equality, excellence, partnership and stewardship guide Advocate's actions in providing health services to those in the communities Advocate is present. Advocate expects that its employees uphold its mission, values and philosophy. Advocate maintains certain policies and practices to ensure that its mission, values and philosophy to deliver innovative, convenient, quality and comprehensive care to its patients and expand access to quality care is fulfilled. Advocate strives to fairly, thoughtfully and consistently apply its various policies and practices across its integrated health care system.

Advocate is committed to maintaining a workplace free of discrimination, retaliation, and harassment and maintains an Equal Employment Opportunity policy and Harassment policy, which includes provisions on the reporting and prompt investigations of harassment claims and a strict non-retaliation policy. Advocate has an Equal Employment Opportunity policy to ensure that employees are treated fairly regardless of their race, color, creed, ethnicity, gender, age, sexual orientation, gender identity or disabilities. (Exhibit 1, *Equal Employment Opportunity Policy*; Exhibit 2, *Harassment Policy*) Advocate also has a Non-Retaliation Policy to prevent retaliation against employees who report violation of the law or engage in statutorily protected activity (Exhibit 3, *Non-Retaliation Policy*)

**C. February 28, 2020 Incident**

On or about 07/15/19, Complainant was hired as a registry Nursing Assistant at Advocate Trinity Hospital. On or about 2/28/20, Complainant was working in the Trinity ICU. Complainant had been in a patient room with a patient with the door open. A non-employee independent physician came into the room and made contact with Complainant's shoulder in a friendly manner to bring a matter to Complainant's attention. The patient was in the room and the door was open when the physician made contact with Complainant's shoulder.

Complainant informed Charge Nurse Rosemary Rodriguez that a physician hit her on the shoulder. Rodriguez immediately investigated the incident and spoke with Complainant and the physician about the incident. The physician explained that he tapped Complainant's shoulder in a friendly manner to correct Complainant on the correct way to take a patient's temperature. Rodriguez informed the physician that he cannot do that and that Complainant found the physical contact to be inappropriate. Complainant entered a summary of the incident on MIDAS. (Exhibit 4, *MIDAS Entry*)

**AdvocateAuroraHealth**

3075 Highland Parkway
Suite 600
Downers Grove, Illinois 60515

T (630) 572-9393
advocateaurorahealth.org

## II.     LEGAL ARGUMENT

There is absolutely no evidence showing that Complainant was subject to any discrimination. Complainant alleges she was discriminated on the basis of sex based on being "subjected to a physical assault" on February 28, 2020. Advocate denies Complainant's allegations. In this case, a non-employee independent physician tapped Complainant's shoulder in a friendly manner to correct Complainant on the correct way to take a patient's temperature. The patient was in the room, and the door was open. This incident is insufficient to establish hostile work environment. Furthermore, Advocate took immediate action to take reasonable care to prevent and correct any harassing behavior. Charge Nurse Rodriguez immediately investigated the incident by speaking with the physician and Complainant and concluded the investigation by informing the physician that he cannot tap Complainant on the shoulder and that Complainant found the contact inappropriate.

"Title VII prohibits the creation of a hostile work environment." *Vance v. Ball State Univ.*, 570 U.S. 421, 427, 133 S.Ct. 2434, 186 L.Ed.2d 565 (2013). A complainant may establish a violation under Title VII by proving that he was subjected to a hostile work environment. *See Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 476 (7th Cir. 2004). To establish hostile work environment, the Complainant must demonstrate that (1) her work environment was both objectively and subjectively offensive; (2) the harassment complained of was based on her sex; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *See Alamo v. Bliss,* 864 F.3d 541, 549 (7th Cir. 2017).

The single incident alleged by Complainant does not rise to the level of actionable hostile work environment. "Title VII is not a general code of workplace civility, nor does it mandate admirable behavior from employers." *McKenzie v. Milwaukee Cty.*, 381 F.3d 619, 624 (7th Cir. 2004). Complainant must show that the single incident was either severe or pervasive such that the conduct altered the conditions of her employment. *Nasserizafar v. Ind. Dep't of Transp.*, 546 F. App'x 572, 575 (7th Cir. 2013). Courts consider the totality of the circumstances when assessing the severity or pervasiveness of the conduct. *See Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 674 (7th Cir. 1993). Specifically, courts consider the frequency of the discriminatory conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *See Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001). The Seventh Circuit has also held that pervasiveness requires a "concentrated or incessant barrage" of conduct. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 646 (7th Cir. 2005). Complainant cannot make this showing.

Complainant has not shown that the alleged conduct is both subjectively *and* objectively offensive. To determine whether the harassment was objectively hostile, courts consider all of the circumstances, including frequency and severity of the conduct, whether it is threatening, humiliating or merely offensive, and whether the harassment unreasonably interferes with the employee's work. *See Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002); *Venters v. City of Delphi,* 123 F.3d 956, 975–76 (7th Cir. 1997). "[T]he

**AdvocateAurora**Health

3075 Highland Parkway        T (630) 572-9393
Suite 600                    advocateaurorahealth.org
Downers Grove, Illinois 60515

---

environment must be one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Smith v. N.E. Ill. Univ.,* 388 F.3d 559, 566 (7th Cir. 2004). Complainant failed to do so here.

Furthermore, criticizing an employee's performance, coaching, memorandum of concern, and corrective action do not rise to the level of adverse employment action. Negative performance evaluations do not rise to the level of actionable adverse employment action. Reprimands, criticism, and negative employment reviews with no accompanying disciplinary action, demotion, or loss of pay do not constitute "materially adverse action." *Hilt–Dyson v. City of Chicago,* 282 F.3d 456, 466 (7th Cir. 2002); *Sweeney v. West,* 149 F.3d 550, 556 (7th Cir. 1998) (declining to broaden definition of adverse employment action to include unfair reprimands); *Volovsek v. Wis. Dep't of Agric. Trade and Consumer Prot.,* 344 F.3d 680, 688 (7th Cir. 2003)("disputed performance reviews ...do not, themselves, amount to the kind of adverse employment action that constitutes discrimination or retaliation").

Complainant alleges that a physician hit her four times on the shoulder in the patient room on 2/28/20. However, such conduct occurring in isolation is not "severe" for purposes of constituting a hostile work environment. See *Rogers v. City of Chicago,* 320 F .3d 748, 750, 752-753 (7th Cir.2003) (concluding that several offensive comments and one incident of physical contact over a period of several months was not an objectively offensive environment); *Schmidt v. Canadian Nat. Ry. Corp.,* 232 F. App'x 571, 574 (7th Cir. 2007)(hitting plaintiff on the shoulder with hands is insufficient); *Scruggs v. Garst Seed Co.,* 587 F.3d 832, 836, 841 (7th Cir.2009) (granted summary judgment where male coworker hit plaintiff with a clipboard and made inappropriate comments); *Marquardt v. Ocean Reef Cmty. Ass'n,* No. 19-10110-CIV, 2020 WL 1812303, at *9 (S.D. Fla. Apr. 9, 2020) (inappropriate comments and hitting on the buttocks with a folder found to be neither severe nor pervasive); *La Bellarte v. Fraternal Enter., Ltd.,* No. 95 C 3189, 1996 WL 465397, at *4 (N.D. Ill. Aug. 2, 1996)(coworker hitting plaintiff, threatening, and being violent to plaintiff was not frequent or severe enough to support plaintiff's hostile work environment claim); *De La Pena v. Metro. Life Ins. Co.,* 953 F. Supp. 2d 393, 416–17 (E.D.N.Y. 2013), *aff'd,* 552 F. App'x 98 (2d Cir. 2014)(hitting plaintiff on the back insufficient to establish hostile work environment claim); *Ricks v. Conde Nast Publications, Inc.,* 92 F.Supp.2d 338, 348 (S.D.N.Y. 2000) (holding that an allegation that a defendant hit the plaintiff on the shoulder and pushed her out of her office was insufficiently severe to establish a hostile work environment claim).

"Courts rarely find limited incidents of physical violence without a sexual element to establish a hostile work environment." *Gerald v. Locksley,* 849 F.Supp.2d 1190, 1234 (D.N.M.2011). Thus, for a single non-sexual incident to establish a hostile work environment claim, it must be extremely severe. *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (noting isolated comments or incidents, unless extremely serious, are not actionable under Title VII); *Melson v. Chetofield,* No. CIV.A.08-3683, 2009 WL 537457, at *5 (E.D. La. Mar. 4, 2009)(throwing a binder at plaintiff is not enough to create a hostile work environment); *Hockman v. Westward Commun'n, LLC,* 407 F.3d 317, 328 (5th Cir.2004)(no hostile work environment where

**AdvocateAuroraHealth**

3075 Highland Parkway
Suite 600
Downers Grove, Illinois 60515

T (630) 572-9393
advocateaurorahealth.org

co-worker slapped plaintiff on behind with newspaper, grabbed or brushed plaintiff's breasts and behind, and held plaintiff's cheeks while trying to kiss plaintiff); *Derouen v. Carquest Auto Parts,* 275 F.3d 42 (5th Cir. 2001)(no hostile work environment where "co-worker attempted to grab [plaintiff's] breasts and later put his hand on and rubbed her thigh"); *Mathirampuzha v. Potter,* 548 F.3d 70, 78–79 (2d Cir. 2018)(holding that a physical altercation where co-worker "grabbed the plaintiff's arm, punched him in the shoulder and the chest, spit in his face, and poked him in the eye" was not severe enough to create hostile work environment under Title VII); *Priest v. Felcor Lodging Tr., Inc.,* No. 05CV1181, 2006 WL 2709386, at *7 (W.D. Pa. Sept. 20, 2006)(insufficient evidence of a hostile work environment where the plaintiff alleged her supervisor, Mitchell: (a) treated the plaintiff "in a demeaning and unprofessional manner"; (b) changed the reporting structure, requiring the plaintiff to report to a male coworker she did not get along with; (c) told the plaintiff to communicate with the male coworker only through Mitchell; (d) ignored or dismissed the plaintiff when she tried to converse with him; (e) told the plaintiff her hard work did not mean she was smart; (f) called her "sunshine"; (g) hit her on the top of her head with rolled up paper, punched her on the arm, and smacked her on the back; and (h) "showed preferential treatment" to the male coworker); *Smith v. Cty. of Humboldt,* 240 F. Supp. 2d 1109 (N.D. Cal. 2003)(finding insufficient evidence of hostile work environment when, over a 10-day period, coworker allegedly pushed employee's head, sat in chair vacated by employee, brushed against employee in bathroom, hit employee's cheekbone, tried to sit next to employee at lunch, and hit employee on her shoulder to get her attention); *Ricks v. Conde Nast Publications, Inc.,* 6 F. App'x 74, 79 (2d Cir. 2001)(berating, hitting on the shoulder, and inappropriate comments insufficient to establish hostile work environment). The non-employee independent physician tapped Complainant on the shoulder to get her attention and correct the way she was taking a patient's temperature while the patient was in the room and the patient room door was open. This single incident is insufficient to establish a hostile work environment claim.

### III. CONCLUSION

Based upon the foregoing, Advocate respectfully requests that Complainant's Charge be dismissed. Should you need any additional information, please feel free to contact me.

Sincerely,

/s/ Nile Miller
Assistant General Counsel
nile.miller@aah.org

 **Advocate Medical Group**

ADVOCATE MEDICAL GROUP
CHICAGO 2301 93RD
2301 E 93RD ST
CHICAGO IL 60617-3913

Cox, Tabituha
MRN: 8996431, DOB: 7/20/1993, Sex: F
Visit date: 10/24/2020

10/24/2020 - Office Visit in Advocate Medical Group Chicago 2301 93 Rd

Clinical Notes

Progress Notes

Helen T Williams, MD at 10/24/2020 1100

OFFICE VISIT

Patient: Tabituha Cox
DOB: 7/20/1993

Date of Service: 10/23/2020
MRN: 8996431

SUBJECTIVE

## Chief Complaint
Patient presents with
- Office Visit
- Referral
    *Pt states requesting referral BH for physical assault. Pt reports she was assaulted by a provider she works with on 2/28/20.*

Last seen on 10/15/20
she is not accompanied.

She presents for BH referral

She states she had an incident happen in Aug 2019- 4 south, Trinity hospital
She states a provider yelled at her because the blood pressure cuff was slightly off the "line on the blood pressure cuff"-- she can't remember what he said but he showed her the proper position of the cuff-- this was her first episode with this provider. She states at the time -- there was no staff member around- only the patient in the room with her and the provider. She felt down about this because he yelled at her. She thought provider was having a long day so she did not document this incident

The 2nd incident happened feb 28th of this year 2020
Was in the MICU
She reports she was hit (she states it was a hard hit) 4 times in the R upper back area  by the same provider because she was taking  Patient's Axillary temp instead of orally or rectally. She felt the provider physically assaulted her and again yelled at her. There was nobody else in the room except for the patient and the provider.. She reported to her manager and a safety event report was filed.

Since then she reports since that 2nd incident, she has been withdrawn and the thought of the incident triggers anxiety and stressful emotions and makes her not want to go to work and was she was also experiencing trouble  Concentrating. She states her friends have noticed a change in her mood--seems to be down and encouraged her to get help.

When she sees provider around when she is working in the hospital, she tries to avoid him.

She contacted Employee assistant program on 9/6/20 and they contacted her on sept 8th-- she states she was evaluated and on sept 17th had coping skills and management session-- it helped

She does not report any suicidal or homicidal thoughts.

However she wants to see a therapist for further care and management.

After office visit, patient sent email providing a few more details to the incident
-- she said she was experiencing pain in the area where she was hit and she took ibuprofen and put an ice pack for couple days until it felt better.

She not longer reports any pain in the affected area she was hit and this occurred months ago in feb 2020

 **Advocate Medical Group**

ADVOCATE MEDICAL GROUP Cox, Tabituha
CHICAGO 2301 93RD          MRN: 8996431, DOB: 7/20/1993, Sex: F
2301 E 93RD ST            Visit date: 10/24/2020
CHICAGO IL 60617-3913

10/24/2020 - Office Visit in Advocate Medical Group Chicago 2301 93Rd (continued)

Clinical Notes (continued)

Review of Systems
Constitutional: Negative.  Negative for fever.
Respiratory: Negative.  Negative for cough and shortness of breath.
Cardiovascular: Negative.  Negative for chest pain.
All other systems reviewed and are negative.

ALLERGIES:
**ALLERGIES:**

| Allergen | Reactions |
|---|---|
| ○ Penicillins | SWELLING and Other (See Comments) |
| *swelling* | |
| *swelling* | |
| ○ Black Walnut Pollen Allergy Skin Test | PRURITUS |
| *Break-outs in the face* | |

MEDICATIONS:
**Current Outpatient Medications**

| Medication | Sig | Dispense | Refill |
|---|---|---|---|
| ○ Aloe Vera 25 MG Cap | -- OTC | | |
| ○ fluconazole (Diflucan) 100 MG tablet | 1 tab by mouth daily for 7 days | 7 tablet | 0 |
| ○ guaiFENesin-DM, (ROBITUSSIN DM) 100-10 MG/5ML syrup | Take 10 mLs by mouth. | | |
| ○ albuterol 108 (90 Base) MCG/ACT inhaler | Inhale 2 puffs into the lungs. | | |
| ○ acetaminophen (TYLENOL) 500 MG tablet | Take 1,000 mg by mouth. | | |
| ○ cetirizine (ZYRTEC) 10 MG tablet | 1 tab by mouth daily for 1 -2 weeks  for seasonal allergy symptoms | 30 tablet | 0 |
| ○ benzonatate (TESSALON PERLES) 100 MG capsule | 1 capsule three times a day as needed for chest congestion | 30 capsule | 0 |
| ○ azithromycin (ZITHROMAX) 250 MG tablet | 2 tabs by mouth on day 1; 1 tab by mouth daily on day 2-5 | 6 tablet | 0 |
| ○ guaiFENesin (MUCINEX) 600 MG 12 hr tablet | 1-2 tabs by mouth evert 12 hours for 5 days for chest congestion then as needed for cought | 30 tablet | 0 |
| ○ ERGOCALCIFEROL PO | | | |
| ○ CALCIUM ASCORBATE PO | Take 1 tablet by mouth. | | |
| ○ Cholecalciferol (VITAMIN D3) 125 mcg (5,000 units) disintegrating tablet | Take 1 tablet by mouth daily (with breakfast). OTC | 30 tablet | |



**Advocate Medical Group** ADVOCATE MEDICAL GROUP Cox, Tabituha
CHICAGO 2301 93RD          MRN: 8996431, DOB: 7/20/1993, Sex: F
2301 E 93RD ST            Visit date: 10/24/2020
CHICAGO IL 60617-3913

10/24/2020 - Office Visit in Advocate Medical Group Chicago 2301 93Rd (continued)

Clinical Notes (continued)

| | | |
|---|---|---|
| ○ Multiple Vitamin (MULTI-VITAMIN DAILY) Tab | Take 1 tablet by mouth daily (with breakfast). For health maintenance | 30 tablet 5 |

No current facility-administered medications for this visit.

PAST MEDICAL HISTORY:
**Past Medical History:**

| Diagnosis | Date |
|---|---|
| ○ Acute bronchitis | 04/03/2020 |
| ○ Breast lump in female, right | |
| ○ Chronic back pain | |
| ○ Chronic neck pain | |
| ○ Chronic pain of both lower extremities | |
| ○ Chronic pain of left knee | |
| ○ Lumbar sprain | 02/2020 |
| *per ortho* | |
| ○ Thoracolumbar scoliosis, mild | 02/2020 |
| *per XR of L-spine* | |
| ○ Weight loss | |

PAST SURGICAL HISTORY:
**Past Surgical History:**

| Procedure | Laterality | Date |
|---|---|---|
| ○ Breast biopsy | | |
| *x2 both were fibroadenoma* | | |

FAMILY HISTORY:
**Family History**

| Problem | Relation | Age of Onset |
|---|---|---|
| ○ Asthma | Sister | |
| ○ Cancer, Breast | Neg Hx | |
| ○ Cancer, Colon | Neg Hx | |
| ○ Cancer, Ovarian | Neg Hx | |
| ○ Cancer, Endometrial | Neg Hx | |

SOCIAL HISTORY:
**Social History**

| Tobacco Use | |
|---|---|
| ○ Smoking status: | Never Smoker |
| ○ Smokeless tobacco: | Never Used |
| Substance Use Topics | |
| ○ Alcohol use: | Not Currently |
| ○ Drug use: | Never |

Drug Use:   Never

 Advocate Medical Group

ADVOCATE MEDICAL GROUP Cox, Tabituha
CHICAGO 2301 93RD          MRN: 8996431, DOB: 7/20/1993, Sex: F
2301 E 93RD ST            Visit date: 10/24/2020
CHICAGO IL 60617-3913

10/24/2020 - Office Visit in Advocate Medical Group Chicago 2301 93Rd (continued)

Clinical Notes (continued)

## Social History

Social History Narrative
  Pt is a nurse assistant at Trinity Hospital. (info as of 3/16/20)

Past medical history, family medical history, surgical history and social history reviewed

### OBJECTIVE

Visit Vitals
LMP                    10/11/2020

Physical Exam

General Appearance:
Well groomed and in no apparent distress

HEENT:
Voice quality normal, Eyes aligned, normal appearing conjunctivae, sclera, and pupils and No visible abnormalities of head and neck

Respiratory:
In no respiratory distress, No coughing and No audible wheeze

Mental Status:
Alert and oriented and Normal mood

### DIAGNOSTIC STUDIES

LAB RESULTS:

No visits with results within 1 Month(s) from this visit.
Latest known visit with results is:
**Orders Only on 06/24/2020**

| Component | Date | Value | Ref Range | Status |
|---|---|---|---|---|
| ◦ Source, 2019 Novel Coronavirus (SA* | 06/24/2020 | NASOPHA RYNGEAL SWAB | | Final |
| ◦ Rapid SARS-COV-2 by PCR | 06/24/2020 | NOT DETECTED | NOTD | Final |

  Comment: SARS-CoV-2 nucleic acid has not been detected. Testing was performed using the Cepheid Xpert
  Xpress SARS-CoV-2 RT-PCR assay that has been given Emergency Use Authorization (EUA) by the United
  States Food and Drug Administration (FDA). These results are
   considered definitive and do not need to be confirmed by another method.

| | | | | |
|---|---|---|---|---|
| ◦ Isolation Guidelines | 06/24/2020 | | | Final |
| Value: | | | | |

Do not use this test result as the sole decision-maker for discontinuing isolation, de-escalate to NonCOVID-19, droplet and contact isolation per the following guidelines:



**Advocate Medical Group**

ADVOCATE MEDICAL GROUP Cox, Tabituha
CHICAGO 2301 93RD          MRN: 8996431, DOB: 7/20/1993, Sex: F
2301 E 93RD ST             Visit date: 10/24/2020
CHICAGO IL 60617-3913

10/24/2020 - Office Visit in Advocate Medical Group Chicago 2301 93Rd (continued)

Clinical Notes (continued)

If a patient has met criteria below and tested negative for COVID-19,
COVID isolation precautions may be "de-escalated" to Droplet and Contact precautions.
The following criteria must be met before a patient can be removed from isolation
At least 3 days (72 hours) since resolution of fever without the use of fever-reducing medications
AND
Significant improvement in respiratory symptoms (e.g., cough, shortness of breath)
AND
Negative COVID-19 Test
  This removes the obligation for N95 masks and eyewear protection.
  The rationale to continue Droplet and Contact precautions is to protect both patient and HCW from any other
virus causing the patient's illness
Check COVID-19 Toolkit for most up to date information: https://www.advocatehealth.com/covid-19-info/

## ASSESSMENT

Assessment
Adjustment disorder with mixed anxiety and depressed mood
- SERVICE TO BEHAVIORAL HEALTH

Physical assault

## PLAN:

This is a 27 year old female who presents for  Complaining of report physical assault at work-- she has been in touch with her
work about this --she is seeking behavioral health/ psychotherapy for further help and management

Mood screens done today--
No evidence of bipolar, evidence of depressed and anxiety mood
PHQ 9- SCORE of 10 with mild effect on life
GAD-7- score of 11 with mild effect of life
No homicidal or suicidal ideation


1.    Adjustment disorder with mixed anxiety and depressed mood
2.    Physical assault

Emotional support provided
Advised her to see BH

CDM/RHM:
- Pap with HPV reflex-- last done 1/2020, neg pap-- f/up in 3 years, 1/2023
- Mammo-- Diagnostic US of R breast done 7/30/20, shows (small mass on right breast) f/up in 6 months, 1/2021
- Ophthal-- yearly exam advised
- Dentist-- cleaning every six months advised
- Shots-- UTD except varicella
- PFT done 6/24/20- no acute findings per pt

REMINDERS:
F/up in 6 weeks-- early to mid dec to re-eval Adjustment disorder
FOLLOW UP WITH DR. WILLIAMS in 3 months (mid Jan 2021) (video) for chronic med problems
LABS DUE after next visit.
KEEP/SCHEDULE APPT: Diagnostic US of R breast 1/2021, ortho surg (Dr. Steven Chandler), dietician (10/28/20)
EDUCATION: COVID-19 prevention and precautions discussed
NEXT VISIT: CDM, result review



**Advocate Medical Group**

ADVOCATE MEDICAL GROUP Cox, Tabitha
CHICAGO 2301 93RD          MRN: 8996431, DOB: 7/20/1983, Sex: F
2301 E 93RD ST             Visit date: 10/24/2020
CHICAGO IL 60617-3913

10/24/2020 - Office Visit in Advocate Medical Group Chicago 2301 93Rd (continued)

Clinical Notes (continued)

Time spent with patient: 30 minutes
50% of time was spent educating patient and coordinating care.

Instructions provided as documented in the AVS.

The Patient and/family or representative indicated understanding of the diagnosis and agreed with the plan of care.

Helen Williams, MD

Electronically signed by Helen T Williams, MD at 10/24/2020 5:51 PM



ILLINOIS DEPARTMENT OF
# Human Rights

JB Pritzker, Governor
James L. Bennett, Director

May 17, 2021

TABITUHA COX
8446 S. BURLEY AVENUE, APT. #2R
CHICAGO, IL 60617

Re: **TABITUHA COX v ADVOCATE HEALTH CARE TRINITY HOSPITAL #210517.002**

Dear Complainant:

You are receiving this letter because you filed a charge with the United States Equal Employment Opportunity Commission (EEOC). The EEOC and the Illinois Department of Human Rights (Department) are parties to a cooperative agreement. Under this agreement, when you filed your charge of discrimination with the EEOC, a copy of the charge was automatically filed with the Department. The Department is keeping a copy of your EEOC charge on file to preserve jurisdiction under Illinois law.

Since you filed your discrimination charge initially with the EEOC, the EEOC is the governmental agency responsible for investigating the charge and the investigation will be conducted pursuant to the rules and procedures adopted by the EEOC. The Department will take no action on your charge until the EEOC issues its findings. **After the EEOC issues its findings,** if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's findings on you. Please also send a one sentence written statement requesting that the Department investigate your charge and include the above Control Number. You may submit a copy of the EEOC's findings by either of the following methods:

**By Mail:** Send your EEOC findings and written statement via U.S. Postal certified mail, return receipt requested, to: Illinois Department of Human Rights, Attn: EEOC Referred Charges/Intake Unit, 100 W. Randolph St., Ste. 10-100, Chicago, IL 60601.

**In Person:** Bring an original and one copy of your EEOC findings and written statement to the Department. The Department will stamp and return the copies to you for your records.

If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings. Upon receipt of the EEOC's findings, the Department will mail you a notice as to what further action the Department may take on your charge.

The 365-day time period for the Department to investigate your EEOC charge is tolled while the EEOC is investigating your charge and does not begin to run until the EEOC issues its findings. Your failure to timely provide the EEOC's findings to the Department will result only in the Department closing your file. **This process does not affect the investigation of your charge at EEOC.** If you do not wish to proceed with the Department, you do not need to take any further action.

This letter **does not apply** to any settlement of this charge the parties have made with the EEOC.

**If you have any questions, please contact Thomas F. Roeser, Pre-Investigations Coordinator, at (312) 814-6295. Please do not contact the EEOC.**

ILLINOIS DEPARTMENT OF HUMAN RIGHTS.

PRE1-EEOC 30
Rev 8/18

CC: Carol Marshall
Human Resources Assistant
Advocate Trinity Hospital
2320 E. 93rd Street
Chicago, Illinois 60617-9984